# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| JENNY RYDER, as successor in interest to ANGELINE KOSTMAN, Individually and on Behalf of All Others Similarly Situated, | Case No.: 19-cv-1456 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **Jury Trial Demanded** |
| LTD FINANCIAL SERVICES, LP, | |
| Defendants. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. ("WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Jenny Ryder ("Ryder") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Ryder's mother, Angeline Kostman ("Kostman"), passed away on February 19, 2019.

5. Ryder is the representative of the Estate of Angeline Kostman (the "Estate"). Ryder is authorized to review any bills, invoices, and other financial correspondence on behalf of the Estate.

6. Kostman was a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt incurred for personal, family, or household purposes, namely a store-brand revolving credit account that was used only for personal, family, or household purposes.

7. Kostman was also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendant sought to collect from her was incurred as a result of a consumer transaction.

8. Ryder brings these claims in her individual capacity and as the representative of the Estate. Ryder has standing to bring these claims in her individual capacity by virtue of her "special relationship" with her mother. *See, O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 943 (7th Cir. 2011) (citing *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 650 (6th Cir. 1997); *see also, Hill v. Woods*, 2017 U.S. Dist. LEXIS 18413, *15 (S.D. Ind. February 9, 2017) (noting that a POA would have standing to bring FDCPA claims); *Crafton v. Law Firm of Levine*, 957 F. Supp. 2d 992, 1000-1001 (E.D. Wis. 2013) (holding a husband had standing to bring FDCPA claims after having read a letter addressed to his wife because "the plain language of 15 U.S.C. § 1692e is not limited in scope to debtors; rather, it prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'"); *Swearingen v. Portfolio Recovery Assocs.*, 892 F. Supp. 2d 987 (N.D. Ill. 2012); *Flowers v. Accelerated Bureau of Collections, Inc.*, 1997 U.S. Dist. LEXIS 3354, 1997 WL 136313, at *7-8 (N.D. Ill. Mar. 19, 1997).

9. Ryder also has standing to bring these claims as a representative of the Estate because the relief sought is remedial and not penal in nature. *See, United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993); *Carter v. First Nat'l Collection Bureau, Inc.*, No. 15-cv-1695,

2017 U.S. Dist. LEXIS 190164, at *5 n.3 (S.D. Tex. Nov. 16, 2017); *see also Dickens v. GC Servs.*, 2018 U.S. Dist. LEXIS 173071 (M.D. Fla. Oct. 2, 2018).

10. Defendant LTD Financial Services, LP, ("LTD") is a debt collection agency with its principal offices located at 7322 Southwest Freeway Ste 1600 Houston, TX 77074.

11. LTD is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

12. LTD is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

13. LTD is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

## FACTS

14. On or about August 20, 2018, First Savings Bank ("First Savings") mailed an account statement to Kostman regarding an alleged debt owed First Savings, associated with a credit card account with an account number ending in 2892. A copy of this account statement is attached to this complaint as Exhibit A.

15. Upon information and belief, Exhibit A is a form account statement, generated by computer, and with the information specific to Kostman inserted by computer.

16. Exhibit A states:

| | |
|---|---|
| New Balance | $592.79 |
| **Minimum Payment Due** | **$314.79** |
| **Payment Due Date** | **December 14, 2018** |

**Late Payment Warning:** If we do not receive your minimum payment by 5:00 PM CT on the date listed above, you may have to pay up to a $25.00 late fee.

3

17.     Exhibit A states that, as of November 19, 2018, Kostman's alleged debt had a "New Balance" of $592.79, with a "Payment Due Date" of December 14, 2018, and a "Minimum Payment Due" of $314.79.

18.     On or about November 29, 2018 LTD mailed Kostman a debt collection letter regarding the same alleged debt owed to First Savings. A copy of this account statement is attached to this complaint as Exhibit B.

19.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Kostman inserted by computer.

20.     Upon information and belief, Exhibit B is a form debt collection letter, generated by computer, and used by LTD to attempt to collect alleged debts.

21.     Exhibit B was the first letter that LTD sent to Kostman with respect to Kostman's alleged First Savings debt.

22.     Exhibit B contains the validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors send debtors along with their initial communications:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment, if any, and mail you a copy of such verification or judgment. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

23.     Exhibit B also includes the following representation:

```
CREDITOR:
FIRST SAVINGS CREDIT CARD
CREDITOR ACCOUNT #:
             2892

LTD REF NO:              2475
BALANCE:       $592.79
```

24. Exhibit B additionally states the following:

> Your account with the above named creditor has been placed with LTD Financial Services, L.P., a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

25. Exhibit B, thus, represents that the debt had been accelerated and the full balance was due when Exhibit B was mailed.

26. Exhibit A, mailed on November 19, 2018, just a few days before LTD mailed Exhibit B to Plaintiff, states the "Minimum Payment Due," thus permitting Plaintiff to return her account to a current status by making a minimum payment by December 14, 2018.

27. Exhibit B fails to include any reference to an amount owing to First Savings other than the total account balance.

28. Exhibit B is therefore false, deceptive, and misleading. *See* FTC Staff Commentary, 53 Fed. Reg. 50097, 50106 ("A debt collector may not ... falsely assert that the debt has matured or that it is immediately due and payable, when it is not.").

29. The unsophisticated consumer cannot determine whether the debt had been accelerated or not, or how much debt is actually due as of the date of Exhibit B which states the "Balance" without stating an amount "due" while Exhibit A seeks only a minimum payment. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.' ").

30. Upon information and belief, LTD is fully aware that its letter is sent during account billing cycles wherein First Savings has sent a statement to consumers seeking a "minimum payment" and not representing that the entire balance is due.

31. Upon information and belief, LTD is fully aware that First Savings sends Exhibit A to consumers with just a few days of the date LTD mails a letter in the form of Exhibit B.

5

32. Upon information and belief, LTD is fully aware of the contents and representations in Exhibit A .

33. Upon information and belief, Kostman read Exhibits A & B.

34. Upon Kostman's death, her assisted living facility forwarded her mail to Ryder.

35. Ryder read Exhibits A & B.

36. Ryder was misled and confused by Exhibit B.

37. The unsophisticated consumer would be misled and confused by Exhibit B.

### *The FDCPA*

38. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Messerli & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after

6

*Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

39. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

40. Misrepresentations of the character, amount, or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Encore Receivable Management, Inc.*, 18-cv-1484-WED, 2019 U.S. Dist. LEXIS 134377 (E.D. Wis. Aug. 9. 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading

8

communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

41. 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

42. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

43. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

44. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

45. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense iLTDdental to the priLTDpal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

46. 15 U.S.C. § 1692g(a) states:

a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

### *The WCA*

47. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

9

48. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

49. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

50. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

51. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

52. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

53. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

54. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

55. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

56. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …." Wis. Admin. Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

57. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

58. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

59. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

60. Prior to sending <u>Exhibit B</u>, LTD was aware that First Savings was sending Kostman account statements stating Kostman's account had a "Minimum Payment Due," which was an amount less than the total balance of Plaintiffs account.

61. LTD represented to Kostman that Kostman's First Savings account had been accelerated by seeking to collect the entire balance and not just the amount actually due.

62. LTD misrepresented the amount, character, and legal status of the debt it was collecting.

63. LTD's attempts to collect the entire balance of class members' First Savings accounts when only a portion of that balance was actually "due," were false, misleading and confusing representations, and were also an unfair and unconscionable means of collecting a debt.

64. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692(f), 1692f(1), and 1692g(a)(1).

## COUNT II -- WCA

65. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. Prior to sending <u>Exhibit B</u>, LTD was aware that First Savings was sending Kostman account statements stating Kostman's account had a "Minimum Payment Due," which was an amount less than the total balance of Plaintiffs account.

12

67. LTD represented to Kostman that Kostman's First Savings account had been accelerated by seeking to collect the entire balance and not just the amount actually due.

68. By attempting to collect an amount which was not yet due, Exhibit B could reasonably be expected to harass a customer.

69. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

70. Plaintiff brings this action on behalf of a Class, consisting of: (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form of Exhibit B to the Complaint in this action, (c) for an alleged debt owed to First Savings and incurred for personal, family, or household purposes, (d) which was not accelerated when Exhibit B was mailed, (e) where the letter was mailed between October 4, 2018 and October 4, 2019, and (f) not returned by the postal service.

71. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

72. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit B violatse the FDCPA and/or the WCA.

73. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

74. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

13

75. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

76. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: October 4, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com